# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JANET L. DICKEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. CIV-07-180-RAW-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Janet L. Dickey requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

A claimant is qualified for disabled widow's insurance benefits if she is the widow of a deceased wage earner, has attained the age of 50, is unmarried (unless an exception applies), and has a disability as defined by the Commissioner's regulations which began no later than seven years after the deceased wage earner's death or seven years after she was last entitled to survivor's benefits. *See* 20 C.F.R. § 404.335. Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy . . ." *Id.* § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might

---

[1]     Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on November 13, 1947, and was 58 years old at the time of the administrative hearing. She has a GED and has worked as a truck stop manager and child care attendant, but alleges she has been unable to work since April 1, 2003, because of depression, anxiety and pain from a broken right ankle and bursitis of the shoulders.

## Procedural History

On December 15, 2003, the claimant applied for disability benefits and disabled widow's insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. The applications were denied. ALJ Richard Kallsnick conducted a hearing (which the claimant failed to attend despite having proper notice thereof) and determined that the claimant was not disabled on October 11, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ's determination that the claimant was not disabled is not entirely clear. He discussed step one at length (referencing in particular the claimant's earnings in two different years after the alleged onset date) but never indicated whether or not he found any substantial gainful activity on the claimant's part (Tr. 57-63). The ALJ apparently concluded at step two that the claimant's mental and physical impairments were not severe, but went on to note that the claimant did not have any impairment that would meet a listing at step three (Tr. 64-75). The ALJ also purported to find at step four that the claimant could return to past relevant work, although he failed to set forth the claimant's RFC and the vocational expert who testified at the hearing indicated that the claimant could return to her past relevant work only upon being asked to assume physical and mental limitations that were not severe (Tr. 286-87). Finally, the ALJ determined that the claimant was not disabled at step five according to Rule 203.14 of the Medical-Vocational Guidelines ("the grids") despite assuming that her capacity to perform medium work was limited by the need "to work[ ] primarily with objects or things rather than interacting with the general public" (Tr. 75). *See, e. g, Hargis v. Sullivan,* 945 F.2d 1482,1490 (10th Cir. 1991) ("[R]esort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments."), *citing Channel v. Heckler*, 747 F.2d 577, 580-81 (10th Cir. 1984).

### Review

The claimant contends that the ALJ erred: (i) by failing to determine whether she had engaged in substantial gainful activity after her onset of disability; (ii) by failing to conduct

a proper step two evaluation; (iii) by failing to make a proper evaluation at steps four and five; and, (iv) by failing to make a credibility determination. In his second contention, the claimant argues that the ALJ failed to properly consider the severity of his mental impairments, *i. e.*, depression and anxiety. The undersigned Magistrate Judge finds this argument persuasive.

The record reveals that the claimant complained of panic attacks in March 2002 following the death of her husband (Tr. 166). In July 2002, she complained of depression, was prescribed Celexa, and her doctor noted that she had been crying and suffering from a lack of concentration (Tr. 165). Although her depression was noted to be improved in October 2003 (Tr. 164), the claimant began receiving treatment at the CREOKS Mental Health Service. She was assessed with major depressive disorder (single episode without psychotic features) based on symptoms of feeling depressed, lack of energy, sleep problems, poor concentration, and feelings of worthlessness. She also was assessed with generalized anxiety disorder, complaining that she felt anxious most of the time, stressed daily over her bills, and was irritable. The claimant was assigned a current Limitation of Functioning ("LOF") score of 52 (comparable to a Global Assessment of Functioning score), with her highest score within the past year being estimated at 60 (Tr. 169-70). By February 2004, the claimant's depression and anxiety were improving on Paxil and Xanax, but the claimant was still having problems sleeping and concentrating (Tr. 168).

The claimant was examined by Dr. Baha Abu-Esheh, M.D., in April 2004. Although she complained of some physical problems, *e. g.*, right ankle pain, bursitis in the shoulders,

the claimant's primary complaints were depression and mental health problems stemming from the deaths of her husband and brother. The claimant's medication had helped, but she still had problems focusing and concentrating. Upon examination, Dr. Abu-Eseh noted that "[t]hought processes appear[ed] normal" and there were "[n]o signs of overt pathology[.]" He recommended that the claimant see a psychiatrist "for proper control of her depression." (Tr. 184-91).

In May 2004, psychologist Margaret McKinney, Ph.D., completed a Psychiatric Review Technique ("PRT") form and evaluated the claimant for affective and anxiety-related disorders. She determined that the claimant had a mild degree of limitation in restriction of activities of daily living, difficulties maintaining social functioning, and difficulties maintaining concentration, persistence, or pace. She noted that the claimant had one or two episodes of decompensation of an extended duration. Dr. McKinney concluded the claimant's mental impairment was not severe (Tr. 193-206).

The claimant underwent a mental status examination with psychiatrist Mabelle Collins, M.D., in September 2004. She described the claimant's thought process as "tangential" with a "flight of ideas." The claimant had been suicidal in the past but was aware that suicide was not "a way out." She felt "depressed, angry, anxious, irritable, guilty and frightened." The claimant experienced some difficulty with performing serial sevens but performed serial threes accurately. She had problems concentrating and found it hard to be around people and talk to them. Dr. Collins assessed the claimant with major depressive disorder (single episode, moderate) and anxiety disorder. She noted some of her physical

problems, *e. g.*, post surgery fractured ankle, bursitis shoulders, peptic ulcer, and her problems with the social environment and unemployment (Tr. 208-13).

Psychologist R.E. Smallwood, Ph.D., reviewed the claimant's records and completed a PRT form evaluating the claimant for affective disorders and anxiety-related disorders in October 2004. He assessed the claimant with mild limitations in activities of daily living, moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace, and no episodes of decompensation of an extended duration (Tr. 218-31). He also completed a mental RFC assessment on which he concluded that the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions and moderately limited in her ability to maintain attention and concentration for extended periods and to interact appropriately with the public. He summarized his findings and noted "[t]he claimant can understand, remember, and carry out simple instructions under routine supervision [and] . . . can relate to supervisors, co-workers, but not the general public, in an incidental fashion." (Tr. 215-17).

Further treatment records show that the claimant visited the emergency room at the Henryetta Medical Center in June 2006. She was suicidal and reported feelings of anxiety and depression and was intoxicated (Tr. 18-19). Upon admittance to the hospital, the claimant underwent a psychiatric evaluation. She was described as "[a]nxious and depressed and impaired from recent intake of alcohol." The claimant had discontinued use of her medication and had started drinking excessively. She was assessed with recurrent major depressive disorder (moderate without psychosis), positive for suicidal ideation, positive for

alcohol abuse, moderate psychosocial stressors, and a GAF score of 30, with a high of 60 in the past year (Tr. 20-23).

In determining that the claimant's mental impairment was not severe (Tr. 64-75), the ALJ discussed the April 2004 physical examination by consulting physician Dr. Eshe (Tr. 184-91), the May 2004 findings of non-examining psychologist Dr. McKinney on the PRT form (Tr. 193-206), the September 2004 report from examining psychiatrist Dr. Collins (Tr. 208-13), and the October 2004 findings of non-examining psychologist Dr. Smallwood on the PRT form (Tr. 218-31) and the mental RFC assessment (Tr. 215-17). His analysis of the claimant's mental impairments was problematic, however, for several reasons.

First, the ALJ failed to properly employ the "special technique" for mental impairments set forth in 20 C.F.R. § 404.1520a and § 416.920a and to fully document his findings. *See Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995) ("When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a [and § 416.920a] and the Listing of Impairments and document the procedure accordingly."), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993).[2] For example, he failed

_____

[2] In conducting a "PRT analysis" pursuant to these regulations, the ALJ must first evaluate whether the claimant has a "medically determinable mental impairment," 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1), and then determine the degree of function that the claimant has lost as a result of the impairment by assessing the claimant's level of functioning in four specific areas. *Cruse*, 49 F. 3d at 617. The four broad areas of function are the following: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and, (iv) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ must assess the degree

to mention whether the claimant had any episodes of decompensation. This omission was significant because Dr. McKinney, whose opinion he adopted in part (Tr. 64), determined that the claimant suffered from one to two episodes of decompensation of an extended duration (Tr. 203). At a minimum, the ALJ should have explained why he chose to adopt only some of Dr. McKinney's PRT findings. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). *See also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Second, the ALJ appears to have misstated Dr. Smallwood's opinions as to the claimant's degree of limitation in maintaining social functioning and concentration, persistence, or pace. The ALJ contends that Dr. Smallwood found that the claimant had *mild* limitations in his ability to interact with the public and in maintaining concentration and

---

of functional loss in each area on a five-point scale. The first three areas utilize descriptive terms of none, mild, moderate, marked, and extreme. The fourth area utilizes numerical terms of none, one to two, three, and four or more. *Id*. §§ 404.1520a(c)(4), 416.920a(c)(4). The ALJ does not have to personally complete a PRT form, but he must document his findings in the decision. *Id*. §§ 404.1520a(e), 416.920a(e).

attention for extended periods (Tr. 65). But Dr. Smallwood concluded on the PRT form that the claimant had *moderat*e limitations in maintaining social functioning and in maintaining concentration, persistence, or pace (Tr. 228), and he indicated on the mental RFC assessment that the claimant was *moderately* limited in maintaining attention and concentration for extended periods and in interacting appropriately with the public (Tr. 215-16).

Third, the ALJ made no mention of the claimant's LOF score of 52 assigned by the CREOKS Mental Health Center in October 2003 and the GAF score of 30 assigned by the Henryetta Medical Center in June 2006. These scores were clearly at odds with the determination that the claimant's mental impairment was not severe, *see*, *e. g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004) ("A GAF score of 51-60 indicates moderate symptoms, such as flat affect, or moderate difficulty in social or occupational functioning.") [quotation omitted]; *see also Roybal v. Astrue*, 224 Fed. Appx. 843, 844 (10th Cir. 2007) ("A GAF score of 21-30 indicates [b]ehavior is considerably influenced by delusions or hallucinations or that a claimant suffers from serious impairment in communication or judgment or that she has an inability to function in almost all areas.") [quotation omitted] [unpublished opinion], so the ALJ should not have ignored them, particularly "[i]n a case like this one, decided at step two[.]" *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [unpublished opinion].

Because the ALJ failed to properly analyze the evidence of the claimant's mental impairments, the decision of the Commissioner should be reversed and the case remanded for proper analysis thereof. If such analysis indicates that the claimant *does* have a severe

mental impairment, the ALJ should determine the claimant's functional limitations, include them in an appropriate RFC, and redetermine whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Parties are herewith given ten (10) days from the date of this service to file with the Court Clerk any objections with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 16th day of April, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**